***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement, incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Columbus County Schools were self-insured with Key Risk as the servicing agent at all relevant times herein.
4. Plaintiff's average weekly wage was $898.45 per week, yielding the maximum compensation rate of $532.00 at all relevant times herein.
5. In addition, the parties stipulated into evidence the following:
(a) Packet of medical records and reports.
(b) Packet of Industrial Commission forms.
(c) Defendant's responses to plaintiff's discovery requests.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-two years old, a college graduate and had been employed by defendant-employer for twenty-six years as of the date of hearing. She was employed as a social worker in the school system.
2. In the Spring of 1998, plaintiff developed persistent problems with pain and stiffness in her left shoulder. Her chiropractor, Dr. John Webster, sent plaintiff to Dr. Ogden, an orthopedic surgeon. On October 1, 1998, Dr. Ogden opined plaintiff had findings of a rotator cuff tear with a frozen left shoulder. He injected the shoulder with a cortisone solution but indicated that he expected for her to ultimately require manipulation of the shoulder.
3. Plaintiff was referred to Dr. Alfred DeMaria, a neurologist, and presented on October 6, 1998. On examination, plaintiff had limited motion of the shoulder and Dr. DeMaria was concerned that she might have symptoms of cervical radiculopathy. Consequently, he ordered an MRI of her neck and nerve testing. The MRI revealed a bulging disc at C5-6. During this time, plaintiff continued to work.
4. On October 26, 1998 plaintiff reported for work with her arm in a sling. As she stood in a hallway talking to a student, the band teacher came up from behind her, grabbed her left arm and spun her around to face him so that he could ask her a question. Plaintiff experienced an immediate onset of pain when this occurred and she immediately went to report the incident at the school office. Plaintiff sought medical care on October 26, 1998 with Dr. Hodgson, her primary care physician. She told Dr. Hodgson that she had problems with her shoulder for a long time and had received medical treatment but that she was having severe pain since the injury at work that morning.
5. Plaintiff presented to Dr. Hodgson on November 3, 1998 with severe neck pain and swelling in her left arm and the left side of her neck. She was diagnosed with pericervical hypersthesisas and paraesthesias of undetermined etiology and referred for a neurosurgical evaluation and follow-up with Dr. Charles Haworth, a neurosurgeon.
6. On November 30, 1998, plaintiff sought treatment with Dr. Haworth. Plaintiff concurrently sought treatment with Dr. Hodgson complaining of worsening pain and he continued to advise her to remain out of work until early December 1998. After Dr. Haworth examined plaintiff and reviewed her test results, he concluded that her symptoms were not due to a neurological problem. In view of her restricted shoulder movement, he recommended physical therapy.
7. On December 16, 1998, plaintiff sought and received treatment for pain in her left shoulder as well as decreased range of motion and hypersensitivity from Dr. Kevin Speer, an orthopedic surgeon. Dr. Speer examined her and had x-rays performed. He then diagnosed her with a frozen shoulder with a reflex sympathetic dystrophy. He prescribed medication, a sling and a form of therapy where the shoulder would be chilled. Plaintiff responded well to the treatment prescribed, so at the next appointment on January 27, 1999, Dr. Speer ordered gentle physical therapy. Plaintiff testified, at the hearing before the Deputy Commissioner, that she returned to work around March of 1999.
8. Dr. Hodgson opined to a reasonable degree of medical certainty that the incident on October 26, 1998, whereby plaintiff's co-worker grabbed her by the left arm and spun her around aggravated plaintiff's underlying frozen shoulder. Furthermore, Dr. Speer opined that a frozen shoulder could be aggravated by the jerking incident sustained by plaintiff at work on October 26, 1998. Finally, Dr. Ogden opined that the sudden pushing or pulling the shoulder could aggravate a pre-existing condition of frozen shoulder.
9. The Full Commission has reviewed the evidence and finds plaintiff's testimony to be credible.
10. The circumstances of plaintiff's October 26, 1998 injury constituted an interruption of her normal work routine and the introduction thereby of unusual conditions likely to result in unexpected circumstances.
11. The competent evidence in the record establishes that plaintiff sustained an injury by accident to her left shoulder arising out of and in the course of her employment with defendant that aggravated or exacerbated her pre-existing left shoulder condition.
12. Plaintiff's average weekly wage on the date of the incident that is the subject of this claim was $898.45, which yields the maximum compensation rate for the year 1998 of $532.00.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On October 26, 1998, plaintiff sustained an injury by accident to her left arm arising out of and in the course of her employment with defendant that aggravated or exacerbated her pre-existing left shoulder condition. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's October 26, 1998 injury by accident, she is entitled to be paid by the defendant temporary total disability compensation at the rate of $532.00 per week for the period beginning October 27, 1998 and continuing until March 1, 1999. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant pay for all medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $532.00 per week for the period beginning October 27, 1998 and continuing until March 1, 1999. Compensation due which has accrued shall be paid in a lump sum subject to attorney's fees hereinafter provided.
2. Defendant shall pay for all medical expenses incurred as a result of plaintiff's compensable injury as may be required to provide relief, effect a cure or lessen the period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under paragraph one of this award is approved for plaintiff's counsel.
4. Defendant shall pay the costs of this action.
This the ___ day of March, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER